UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 10-23138-CIV-MORENO

PAUL B. HARRISON,

    Plaintiff,

vs.

OCEAN BANK, a Florida banking corporation,
and FEDERAL DEPOSIT INSURANCE
CORPORATION,

    Defendants.
_____/

## ORDER GRANTING FDIC'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING ALL OTHER MOTIONS AS MOOT

Plaintiff Paul B. Harrison, brings this action against Defendants Ocean Bank and the Federal Deposit Insurance Corporation (the "FDIC") in an attempt to invalidate an administrative decision of the FDIC. Harrison and Ocean Bank had entered into a Settlement Agreement to settle various employment discrimination and whistleblower retaliation claims that Harrison threatened to assert after he was involuntarily terminated from his position at Ocean Bank. The FDIC's decision that the Settlement Agreement constituted a "golden parachute payment" had the effect of voiding the Settlement Agreement. Harrison argues that the FDIC's decision is invalid as it was an "arbitrary and capricious" agency decision.

The Complaint (**D.E. No. 1**) alleges two counts. Count I is a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Count II is a claim under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 702 and 704, seeking a declaration that the FDIC's decision that the

Settlement Agreement is a golden parachute payment is invalid under the APA in that it was an "arbitrary and capricious" agency decision. Harrison and the FDIC filed cross Motions for Summary Judgment. Ocean Bank filed a Response **(D.E. No. 38)** to the cross-motions in which it states that it takes no position on either motion and takes no position as to whether the Settlement Agreement constitutes a golden parachute.

THIS CAUSE came before the Court upon Defendant Federal Deposit Insurance Corporation's Motion for Summary Judgment **(D.E. No. 29)** and Plaintiff's Motion for Summary Judgment **(D.E. No 30)**, both filed on <u>**April 29, 2011**</u>.

### I. FACTUAL BACKGROUND

Plaintiff Paul Harrison was employed by the Defendant Ocean Bank from October 22, 2007 until October 24, 2008. Harrison served as Ocean Bank's Senior Vice President and Chief Appraiser until his employment was ended by the Bank.

After being fired, Harrison threatened to file a lawsuit against Ocean Bank. The suit was based on claims of defamation, intentional infliction of emotional distress, whistleblower retaliation in violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 and Florida's private sector Whistleblower's Act and discrimination, harassment, retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992.

Ocean Bank and Harrison engaged in pre-suit mediation that yielded a Settlement Agreement. The Settlement's terms included pay for Harrison compensatory damages for emotional distress, humiliation and loss of dignity, costs, backpay and attorney's fees. Ocean Bank and Ocean Bank's insurance carrier contributed the settlement money that were placed into an interest bearing escrow

account.

The Settlement Agreement, signed by both Harrison and Ocean Bank, included the requirement that it be approved by Defendant Federal Deposit Insurance Corporation ("FDIC") and the Florida Office of Financial Regulation ("OFR"). In a letter dated March 16, 2009, Ocean Bank requested FDIC approval of the Settlement. Ocean Bank explained it did not consider the Settlement was a golden parachute. The Settlement Agreement between Ocean Bank and Harrison provided that it would become "null and void without penalty to any party if the Agreement is not approved by the FDIC and [the Florida Office of Financial Regulation]."

At the time Ocean Bank was classified as a "troubled institution" by the FDIC pursuant to 12 C.F.R. § 303.101(c) because of its financial condition and was subject to an increased level of regulatory oversight. As a troubled institution, Ocean Bank was prohibited from making payments that were "in the nature of compensation" and payable upon or after the termination of a bank officer or employee's employment without first seeking approval from the FDIC. This regulatory prohibition is aimed at preventing troubled banks from making "golden parachute" payments, as defined by 12 C.F.R. §§ 359.1(f) and 359.2, to terminated employees without first receiving permission from the FDIC. These regulations seek to prevent troubled banks from draining their assets through payments to high-ranking employees.

In April 2009, the FDIC verbally informed Ocean Bank that it considered the Settlement a golden parachute payment under FDIC rules, section 359.1(f). The FDIC reiterated this decision in a letter dated October 20, 2009, from Acting Regional Director Doreen Eberley.

In response, Harrison filed a lawsuit. In July 2010, in *Paul B. Harrison v. Ocean Bank, et al.*, Case No. 10-CV-20085-Moreno, this Court granted Harrison's Motion for Summary

Judgment and remanded the matter back to the FDIC for further proceedings. Summary judgment was deemed proper due to the FDIC's failure to provide an explanatory analysis of its determination that the Settlement was a golden parachute.

In August 2010, the FDIC again determined the Settlement was a golden parachute under 12 C.F.R. § 359.1(f) and as prohibited by 12 C.F.R. § 359.2. In a letter dated August 5, 2010, the FDIC informed Ocean Bank of its decision and the manner by which it applied the governing regulation to the Settlement.

## II. RELEVANT STATUTORY AND REGULATORY PROVISIONS

Title 12 U.S.C. §1828(k) provides that "the [FDIC] may prohibit or limit, by regulation or order, any golden parachute payment or indemnification payment," 12 U.S.C. §1828(k)(1). Section §1828(k)(4)(A) defines the term "golden parachute payment" as:

> [A]ny payment (or any agreement to make any payment) in the nature of compensation...for the benefit of any institution-affiliated party...that is contingent on the termination of such party's affiliation with the institution or holding company; and is received on or after the date which . . . the institution's appropriate Federal banking agency determines that the insured depository institution is in a troubled condition (as defined in the regulations prescribed pursuant to section 1831i(f) of this title);

12 U.S.C. §1828(k)(4)(A).

The FDIC's Regulation 12 C.F.R. § 359.1(f) defines "golden parachute payment" as follows:

> (f) Golden parachute payment. (1) The term golden parachute payment means any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution...for the benefit of any current or former [institution-affiliated party] pursuant to an obligation of such institution . . . that:

       (i) Is contingent on, or by its terms is payable on or after, the termination of such party's primary employment or affiliation with the institution . . . ; and
       (ii) Is received on or after, or is made in contemplation of, any of the following events: . . . (C) A determination by the insured depository institution's . . . appropriate federal banking agency . . . that the insured depository institution . . . is in a troubled condition, as defined in the applicable regulations of the appropriate federal banking agency (§ 303.101(c) of this chapter);

12 C.F.R. § 359.1(f).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)

### IV. DECLARATORY JUDGMENT

Harrison requests the Court make a declaratory judgment pursuant to 28 U.S.C. § 2202 finding that the payment from Ocean Bank to Harrison was not a "golden parachute." FDIC

argues that it is not a party to the Settlement and therefore there is no controversy. "The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury can be traced to the challenged action, and the injury is likely to be redressed by a favorable court disposition." *Atlanta Gas Light Co. v. Aetna Cas & Sur. Co.*, 68 F.3d 409, 4143 (11th Cir. 1995).

The Court finds that a controversy between Harrison and the FDIC exists in that the FDIC's determination that the Settlement Agreement is a golden parachute indirectly affects Harrison and his rights under the Settlement Agreement. Further, this controversy is based on a federal question because it challenges the FDIC's decision in its interpretation of 12 C.F.R. § 359.1(f). Harrison alleges to have been indirectly injured when the FDIC determined the Settlement Agreement to be a golden parachute payment, this injury is traceable to the FDIC's decision, and this injury could be redressed by this Court if it were to invalidate the FDIC's decision under the APA. Therefore, the Court will review the FDIC's determination under the APA in order to adjudge whether any redress is necessary.

## V. THE FDIC'S DETERMINATION

Generally, actions taken by federal administrative agencies are subject to judicial review. *See* 5 U.S.C. § 706; *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). The level of deference due the FDIC is argued by both parties in their opposing summary judgment motions. The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800,

1810 (2009)(citing *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 545-549 (1978)). The APA allows a reviewing court to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). "[T]he arbitrary and capricious standard focuses on the rationality of the agency's decision-making process rather than on the rationality of the actual decision." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994). "The Scope of review under the 'arbitrary and capricious' standard is narrow and the court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

    While the arbitrary and capricious standard is narrow, the agency is required to provide an explanation of the reasoning for its decision. *See Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). The executive agency must articulate some "rational connection between the facts found and the choice made." *Id.; see also Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). A reviewing court must "insist that an agency 'examine the relevant date and articulate a satisfactory explanation of its action.'" *FCC v. Fox Television* 129 S. Ct. at 1810 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). In short, "to survive the judicial review under the arbitrary and capricious standard, an agency must explain the rationale of its decision." *Deaton, Inc. v. Interstate Commerce Comm'n*, 693 F.2d 128, 131 (1982). The reviewing court cannot, however, supply its own reasoned basis for the agency's decision that was not given by the agency itself. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Nor can the court accept "post hoc rationalization by counsel as prime authority for agency decision." *Hooker Chems. & Plastics Corp. v. Train*, 537 F.2d 620, 636 (2d Cir. 1976). "Nevertheless, an agency determination is generally upheld if its basis can be discerned from the

opinion." *Deaton,* 693 F.2d at 131 (citing *Bowman,* 419 U.S. at 285-86)(finding the agency's written opinion contained enough analysis from which the court could determine the factors the agency considered in reaching its decision.)

The FDIC contends its decisions is due the highest deference by the Court as laid out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). Harrison argues that such high deference should not be applied for two reasons. First, Harrison argues the FDIC interpretation is not supported by the plain language of the regulation. Second, Harrison argues that because other agencies are also assigned to interpret the statute, *Chevron* deference is inapplicable. *See 1185 Ave. of the Ams. Assocs. v. Resolution Trust Corp.,* 22 F.3d 494, 497 (2d Cir. 1994.) Harrison deconstructs the regulation and related statute, alleging the FDIC failed to note context, composition, limiting cues and proper definitions that led to its improper interpretation. Harrison further argues that only the APA's arbitrary and capricious standard should be applied. The Court needs only to apply the APA standard to reach a decision, as it is "a heavy burden to have a court declare an agency action to be arbitrary and capricious." *Legal Environmental Assistance Foundation, Inc. v. EPA* 276 F.3d 1253, 1265 (11th Cir. 2001).

In the present case, the rationale for the FDIC's decision is laid out in its letter dated August 5, 2010. The letter ("Letter"), dated August 5, 2010, began with the facts leading to the FDIC's involvement, then it applied those facts to 12 C.F.R. § 359.1(f), and lastly it laid out the two-step decision of how application of the regulation informed the basis for determining the Settlement to be a golden parachute that should be denied.

In the Letter, the FDIC defines payment pursuant to 12 C.F.R. § 359.1(k)(1) and 12 C.F.R. § 359.1(k)(2) as any direct or indirect transfer of any funds and the conferring of any

benefit. The FDIC categorizes Harrison as an institution affiliated party ("IAP") pursuant to the regulation after brief description of his title and length of employment with Ocean Bank. The FDIC categorizes Ocean Bank as a troubled institution pursuant to 12 C.F.R. § 359.1(f)(1)(ii)(C) and 303.101(c), but does not provide description of why the Bank fits this criteria. Given that Ocean Bank's status as a troubled institution is the reason the Settlement was submitted to the FDIC for approval, the Bank's status can be considered understood. The FDIC then details its application of the regulation to the termination and resulting Settlement to Harrison. The FDIC explains its rationale that the term compensation "was intended to be broadly construed in the regulation." It also states that "[a]ll the proposed amounts are considered to be compensation to Harrison for his termination, and thus constitute compensation for purposes of the regulation." The FDIC analysis continues, explaining that it applied the regulation in an attempt follow the central purposes of the regulation as it interprets it.

The letter finishes with three bullet points on the FDIC's general view of the Settlement's relationship to Ocean Bank's best interests:

> "[t]he total proposed payment of $1,000,000 under the Agreement is excessive in relation to Harrison's compensation, duties, and short tenure at the Bank"

> "[t]he total proposed settlement payment and the amount the Bank would pay directly are significant" and "[t]his amount represents a significant charge to the Bank's already battered earnings and troubled financial position."

> "[t]here has been no demonstration that the payment to Harrison would be a long-term savings to the Bank" and it "might set a dangerous

precedent for settlements should the Bank wish to terminate other employees who have no performed to expectations."

The Letter provides adequate explanation of how it applied the regulation. The Court does not have to go beyond the explanation provided by FDIC because it provides rational connection between the facts, the regulation it needed to apply and the choice it made.

## VI. CONCLUSION

For the reasons stated in this Order, it is

**ADJUDGED** that:

(1) The FDIC's Motion for Summary Judgment is GRANTED because the FDIC adequately explained to Harrison the manner in which it applied 12 C.F.R. § 359.1(f) to Harrison's Settlement Agreement and how that application led to it to determine the Agreement to be a golden parachute payment. The FDIC was the agency required to make the determination and in doing so, it provided the rationale for its determination in its letter to Harrison, dated August 5, 2010. In reviewing that rationale, the Court finds no evidence that the FDIC's determination was arbitrary or capricious.

(2) Paul B. Harrison's Motion for Summary Judgment is DENIED.

(3) All other pending motions are DENIED as Moot.

(4) This case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of June, 2011.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **10-23138-CIV-MORENO**

PAUL B. HARRISON,

    Plaintiff,

vs.

OCEAN BANK, a Florida banking corporation,
and FEDERAL DEPOSIT INSURANCE CORPORATION

    Defendants.
_____/

## **FINAL JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and 58, and in accordance with the reasons stated in the Court's Order Granting Summary Judgment on **June 29, 2011**, judgment is entered in favor of the Defendant FEDERAL DEPOSIT INSURANCE CORPORATION and against Plaintiff PAUL B. HARRISON.

DONE AND ORDERED in Open Court at Miami, Florida, this 29th day of June, 2011.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record